# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 4, 2020

Lyle W. Cayce
Clerk

No. 20-40248

Suzanne S. Ron,

*Plaintiff—Appellant*,

*versus*

Avishai Ron, *Individually and as Trustee of the* Suzanne and Avi Ron 201 Children's Trust; Gary Stein,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:19-CV-211

Before Stewart, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:*

This appeal involves a dispute between ex-spouses over the alleged fraudulent transfer of community property funds to a trust established for the couple's three children. Here, we review the district court's judgment compelling arbitration of Plaintiff-Appellant's claims against her former

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

husband and dismissing her remaining claims against a second named defendant in the suit. For the following reasons, we AFFIRM.

## I. Facts & Procedural History

Suzanne S. Ron and Avishai Ron were married in 1994 and had three children. The couple enjoyed substantial success in the real estate business during their twenty-year marriage. In 2012, they established reciprocal trusts to benefit from the federal gift tax exemption available that year. The trust at the heart of this dispute was created by Suzanne and was titled the Suzanne and Avi Ron 2012 Children's Trust ("Children's Trust"). According to the original terms of the Children's Trust, Suzanne was the settlor, Avi was the Trustee, the couple's three children—Daniel, Alexander, and Adam—were the beneficiaries, and Gary Stein was named "Trust Protector." As the Trust Protector, Stein had the authority to add and remove trustees and beneficiaries and he was also insulated from liability for certain actions pertaining to the trust.

Suzanne filed for divorce from Avi in 2014 and the divorce was finalized in April 2017. The final divorce decree dividing the marital estate awarded Suzanne a $19 million equalization judgment. Avi appealed the decree and in October 2017, the two mediated their dispute before Alan Levin. When the mediation ended, they executed a Confidential Mediated Settlement Agreement ("MSA"). By the terms of the MSA, Suzanne accepted a reduced equalization judgment with a payment schedule and Avi agreed to no longer appeal the final divorce decree. The MSA also contained an arbitration clause pertaining to any future disputes.

In 2018, Suzanne and Avi began to dispute their obligations under the MSA and Avi obtained an order compelling arbitration before Levin. Then in June 2019, Suzanne filed suit in federal district court. In her complaint, she named Avi as a defendant, both individually and as the trustee of the

No. 20-40248

Children's Trust. She alleged that "Avi caused assets in which Suzanne and Avi held community interests to be transferred to the Trust." She claimed that the value of the fraudulent transfer totaled approximately $1.3 million. She also named Stein as a defendant alleging that, as the Trust Protector, he assisted Avi in completing the fraudulent transfers by appointing him as a beneficiary of the Children's Trust. In total, Suzanne brought two claims against Avi: (1) conversion; and (2) violations of the Texas Uniform Fraudulent Transfer Act ("TUFTA")[1]; and three claims against Stein: (1) civil conspiracy based on conversion; (2) civil conspiracy to violate TUFTA; and (3) breach of fiduciary duty. She sought a money judgment, imposition of a constructive trust, damages, injunctive relief, a declaratory judgment, appointment of a receiver, TUFTA equitable remedies, attorneys' fees and expenses, and costs.

Stein moved to dismiss Suzanne's claims against him pursuant to Federal Rule of Procedure 12(b)(6) and Avi moved to compel arbitration of Suzanne's remaining claims. The magistrate judge issued a memorandum opinion recommending that Stein's motion to dismiss be granted. The following day, it issued a second memorandum opinion recommending that the district court grant Avi's motion to compel arbitration. The district court agreed, adopted the magistrate judge's memorandum opinions and recommendations, and granted both motions. Suzanne filed this appeal.

## II. Discussion

On appeal, Suzanne argues that the district court erred in granting Stein's Rule 12(b)(6) motion to dismiss. She further contends that because

---

[1] Tex. Bus. & Comm. Code § 24.001, *et seq.*

there was no valid arbitration agreement in place, the district court erred in granting Avi's motion to compel arbitration. We disagree on both counts.

*A. Motion to Dismiss*

We review the district court's grant of a motion to dismiss de novo. *Budhathoki v. Nielsen*, 898 F.3d 504, 507 (5th Cir. 2018).

Stein's role, powers, and duties as the Trust Protector were defined under the express terms of the Children's Trust. Relevant to Suzanne's claims, Stein had the power to add and remove beneficiaries. Section 4.11(e) of the Children's Trust describes the Trust Protector's powers as follows:

> The Trust Protector may add as a beneficiary of any trust established hereunder (i) any descendant of my husband's parents; (ii) any spouse or surviving spouse of any such descendant (other than [Suzanne]); and (iii) any charity, subject to any limitations the Trust Protector determine appropriate. The Trust Protector may also remove any beneficiary who was added under this subsection.

According to Suzanne, Stein took advantage of this provision and appointed Avi as a beneficiary of the Children's Trust so that Avi could complete the alleged fraudulent transfer of community property to the trust. On these grounds, she brought claims against Stein for civil conspiracy based on conversion, civil conspiracy to violate TUFTA, and breach of fiduciary duty.

In its memorandum opinion, the magistrate judge determined that Suzanne's civil conspiracy claim failed under *Chu v. Hong*, 249 S.W.3d 441 (Tex. 2008). We agree. In that case, the Texas Supreme Court held that because there is no independent tort for a spouse's wrongful disposition of community property, third parties similarly could not be held liable on allegations of conspiring with the spouse. *Id.* at 447 ("Because [the plaintiff]

has no tort claim against her former husband under Texas community-property law, she has no conspiracy claim against [her former husband's attorney] for conspiring in such a tort."). Here, because Suzanne could not advance a claim in tort against Avi for the alleged fraudulent transfer of their community assets to the Children's Trust, she could not bring a claim against Stein for conspiring with Avi to complete the transfer. *Id.*

Next, the magistrate judge addressed Suzanne's claim that Stein conspired with Avi to violate TUFTA. Citing our decision in *Mack v. Newton*, 737 F.2d 1343 (5th Cir. 1984), the magistrate judge held that her claim failed because Stein did not benefit from or receive a property interest in the alleged fraudulent transfer of community property. We agree with this reasoning. *See id.* at 1361 ("[W]e are persuaded that the Texas statute . . . does not provide for recovery other than recovery of the property transferred or its value from one who is, directly or indirectly, a transferee or recipient thereof."). Moreover, as the magistrate judge observed, most other jurisdictions similarly decline to permit claims based on derivative liability for fraudulent transfers. *See Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp. 2d 884, 918 (D. Ariz. 2007) ("[T]here is no independent cause of action for aiding and abetting a fraudulent transfer under the [Arizona Uniform Fraudulent Transfer Act]."); *Freeman v. First Union Nat'l Bank*, 865 So.2d 1272, 1277 (Fla. 2004) ("[W]e conclude that [the Florida Uniform Fraudulent Transfer Act] was not intended to serve as a vehicle by which a creditor may bring a suit against a non-transferee party . . . for monetary damages arising from the non-transferee party's alleged aiding-abetting of a fraudulent money transfer."); *Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker L.L.P.*, 2007 WL 129003, at *3 (D. Del. 2007) (recognizing that "[t]he majority of courts interpreting state UFTA laws . . . have concluded that liability cannot be imposed on non-transferees under aiding and abetting or conspiracy theories"). In other words, TUFTA liability is generally

restricted to parties to the transfer. As someone who was not a party to and did not benefit from the alleged fraudulent transfer, Stein could not be held personally liable under TUFTA.

Finally, the magistrate judge rejected Suzanne's claim that, as Trust Protector, Stein breached both formal and informal fiduciary duties owed to her under the terms of the trust. The magistrate judge reasoned that the express terms of the trust did not create a formal fiduciary duty between Stein and Suzanne since she was neither a beneficiary nor an interested party to the trust. We agree.

Fiduciary relationships can be formal or informal. "A formal fiduciary relationship arises as a matter of law in certain relationships, such as attorney-client, partnership, and trustee relationships." *Anglo-Dutch Petrol. Int'l, Inc. v. Smith*, 243 S.W.3d 776, 781 (Tex. App.-Houston [14th Dist.] 2007, pet. denied) (citing *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005)). Informal fiduciary relationships "can arise from a moral, social, domestic or purely personal relationship of trust and confidence, but to impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to and apart from the agreement made the basis of the suit." *Id*. (citing *Meyer*, 167 S.W.3d at 331). "Not every relationship involving a high degree of trust and confidence rises to a fiduciary relationship." *Id*. at 781–82 (citing *Meyer*, 167 S.W.3d at 330).

Section 4.01 of the Children's Trust provides that "The purpose of a Trust Protector is to direct [Suzanne's] Trustee [*i.e.*, Avi] in certain matters concerning the trust, and to assist, if needed, in achieving [Suzanne's] objectives as expressed by the other provisions of [Suzanne's] estate plan hereunder." Although, as Suzanne points out, the Trust Protector's authority is conferred in a fiduciary capacity, that does not equate to the establishment of a fiduciary relationship between Stein and Suzanne. At

most, by its plain terms, Stein's obligations under the Children's Trust are to the trust itself and to the Trustee—Avi.

We further agree with the magistrate judge's determination that no informal fiduciary relationship existed between Stein and Suzanne because Suzanne failed to point to the existence of a special relationship of trust and confidence between herself and Stein that existed prior to, and apart from, the establishment of the Children's Trust. *Id.* at 781 ("[T]o impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to and apart from the agreement made the basis of the suit."). The district court did not err in granting Stein's motion to dismiss.

## B. Motion to Compel Arbitration

We review the district court's ruling on a motion to compel arbitration de novo. *Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 725 (5th Cir. 2020).

In ruling on a motion to compel arbitration, the court must first determine whether the parties agreed to arbitrate the particular type of dispute at issue. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). In answering this question, the court considers: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* The Federal Arbitration Act reflects a "liberal federal policy favoring arbitration." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012).

Suzanne brought claims against Avi alleging conversion and violations of TUFTA. In analyzing Avi's motion to compel arbitration, the magistrate judge correctly determined that the MSA amounted to prima facie evidence of a valid agreement to arbitrate. *See Ridge Nat. Res. L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 120–21 (Tex. App.—El Paso 2018, no pet.)

No. 20-40248

("The signed container contract sets out the terms of the underlying transaction, and the arbitration clause evinces a mutual intent to arbitrate. As such, we find that there is prima facie evidence of formation[.]"); *see also Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559, 565 (Tex. App.—El Paso 2016, pet. denied).

Suzanne argues that her claims under the Children's Trust do not fall within the scope of the MSA and thus, the arbitration clause does not apply to those claims. We disagree. The record confirms that the MSA contains an extremely broad arbitration clause requiring the parties to "submit any dispute related to this agreement to Alan Levin for binding arbitration." As the magistrate judge explained, the allegations in Suzanne's complaint against Avi pertaining to the Children's Trust repeatedly referenced the MSA. For example, in her amended complaint under the Children's Trust, Suzanne specifically alleged that the MSA was the result of Avi's fraud and breach of fiduciary duties. She also claimed that, under the MSA, she was Avi's creditor and that the alleged $1.3 million fraudulent transfer was executed to defraud her as a creditor under the MSA. For these reasons, we conclude that Suzanne's allegations against Avi involving the Children's Trust squarely implicate the terms of the MSA and thus, fall within the scope of the valid arbitration agreement contained therein. The MSA's release clause further supports this conclusion since it provides that the parties jointly released each other from "any and all claims" through the date of its

No. 20-40248

execution. The district court did not err in granting Avi's motion to compel arbitration.[2]

## III. Conclusion

The district court's judgment granting Stein's motion to dismiss and Avi's motion to compel arbitration is AFFIRMED.

---

[2] Suzanne also argues that the arbitration provision in the MSA is substantively unconscionable because Levin's service as the parties' mediator disqualifies him from serving as their arbitrator. We disagree. As the magistrate judge noted, Texas courts have held that a mediator can serve as an arbitrator in the same matter. *See In re Provine*, 312 S.W.3d 824, 830 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("Our court has held that a mediator can serve as an arbitrator in the same matter with the parties' consent, because the parties know that information disclosed to the mediator during mediation can be used by the mediator in making an arbitration decision.").